CÓRDOVA *v.* SANTISTEBAN CHAVARRI & CO. ET AL.

APPEAL from the District Court of Arecibo.

No. 30.—Decided June 25, 1904.

SIMULATED CONTRACTS—CONSIDERATION—FRAUD OF CREDITORS.—Contracts for the conveyance of property entered into after the abolition of the tax on transfers of absolute dominion, without consideration or upon an unlawful consideration, and with the intention of defrauding the creditors of any of the parties, are considered simulated contracts.

ID.—DELIVERY OF PRICE—DEPOSIT OF THE AMOUNT OF CREDITS.—Contracts for the transfer of property effected by persons liable at the time for other than mortgage debts, or by persons engaged to guarantee the debts of others, if, upon the execution of said contracts, the notary should not certify in the deed that the price had been delivered in his presence, or unless a deposit in cash has been made in some bank or other institution to the satisfaction of

their creditors, or unless sufficient property to meet the same has been retained by said debtors, shall be considered simulated contracts.

PRIVATE DOCUMENT—EFFECT OF ITS DATE WITH RESPECT TO THIRD PERSONS.— The date of a private document shall not be computed with respect to a third person except from the day on which it may have been incorporated or recorded in a public registry, from the death of one of those who signed it, or from the day on which it is delivered to a public official by reason of his office.

EVIDENCE—OPINION OF EXPERTS.—Courts must consider the probatory force of expert opinions according to the rules of sound judgment.

CONTRACTS—WITHOUT CONSIDERATION—UNLAWFUL CONSIDERATION.—Contracts without a consideration, or with an unlawful consideration, are null and void and without effect.

COMPLAINT—SUBSIDIARY PETITIONS.—A complaint having been dismissed, it is unnecessary to make any ruling with regard to such subsidiary petitions as may have been presented in the action.

## STATEMENT OF THE CASE.

This is an action instituted in the District Court of Arecibo by Francisco D. Córdova y Stewart, who is of legal age, married, and a resident of Utuado, in his own right, as plaintiff, against Santisteban Chavarri & Company, a commercial firm of this city, and Pedro Rivera Collazo, who is of legal age, a widower, and a resident of Utuado, who has been declared in default, to determine the ownership of property by proceedings in intervention. The case is pending before us on an appeal in cassation, now ordinary appeal, prosecuted by the plaintiff in intervention from the judgment rendered by said court, the appellant having been represented in this court by Attorney Felipe Casalduc Goicoechea, and the respondent firm by Attorney Antonio Alvarez Nava, and Pedro Rivera Collazo having failed to appear.

Pedro Rivera Collazo, being the owner of a rural estate situated in the *barrio* of Caonillas-Arriba, municipal district of Utuado, composed of 200.83 *cuerdas* of land, the one-half of which estate he acquired from his brother, Manuel Praxedes Rivera Collazo, for the sum paid of 5,000 *pesos,* by public deed executed on February 6, 1897, conveyed 65 *cuerdas* to the commercial firm of Roses & Company in payment of a

certain claim, by public deed executed on August 7, 1900. By a subsequent deed dated the 14th of November of the same year, he mortgaged 40 *cuerdas* in favor of José María Lafontaine y Pagán to secure the payment of a claim of $1,500, which he bound himself to pay on the 31st of January of the following year, the amount of the mortgage being increased by $300 additional for expenses and costs in the event of litigation.

By public deed executed in the city of Utuado on August 7, 1900, before Notary Francisco Y. Náter y Rivera, Pedro Rivera Collazo sold to Francisco D. Córdova 50 *cuerdas* of the land embraced in the estate of 200.83 *cuerdas* already mentioned, for the sum of $1,800 in American gold, which sum the vendor admitted having previously received, said document having been recorded in the registry of property of Arecibo under date of the 12th of December of said year.

In a petition of December 3, 1900, the commercial firm of this city, Santisteban Chavarri & Company, applied to the District Court of Arecibo for the issuance of a cautionary attachment against Pedro Rivera Collazo upon the 95.83 *cuerdas* remaining to him of the estate of 200.83 *cuerdas,* after the segregation of the 65 *cuerdas* transferred to Roses & Company in payment of said claim and the 40 *cuerdas* mortgaged to José Ma. Lafontaine. The object of said attachment was to obtain the collection of 2,227 *pesos* and 98 *centavos,* provincial money, or $1,336.79 American gold, for which Pedro Rivera Collazo was indebted to them as principal and interest liquidated on the 30th of November of the previous year, the same being evidenced by seven promissory notes, all signed by him, and three of which were also subscribed by Francisco D. Córdova. The attachment applied for was issued by an order of the 5th of said month of December, and the levy made thereunder was extended to an estate of 16 *cuerdas* held by Pedro Rivera Collazo in co-ownership with Francisco D. Córdova.

On May 29, 1901, Francisco D. Córdova, who was represented by Attorney Felipe Casalduc Goicoechea, presented in the District Court of Arecibo a complaint in intervention against the commercial firm of Santisteban Chavarri & Company and Pedro Rivera Collazo, claiming the ownership of 50 *cuerdas* of the lands attached at the instance of said firm, according to a deed executed in his favor by Pedro Rivera Collazo on August 7, 1900, and recorded in the registry of property. Said lands, together with the co-ownership of Pedro Rivera Collazo in the other estate of 16 *cuerdas,* had been ordered sold at public sale in an executory proceeding prosecuted by the said firm against Rivera Collazo, according to an order of said 1st day of May, the 30th day of said month having been fixed for the sale. As grounds of law he cited articles 348, 349, and 353 of the old Civil Code, articles 1530, 1533, 1534, and 1535 of the Law of Civil Procedure, and article 44 of the Mortgage Law, the decisions of the Supreme Court of Spain of May 9 and September 23, 1873, June 17, 1875, April 5, 1878, October 10, 1882, and February 19, 1886, and General Orders No. 118, series of 1899; and concluded with the prayer that judgment be rendered declaring that the estate of 50 *cuerdas,* referred to in the said deed, of which he accompanied a copy, is his exclusive property, together with its products, and that the same be therefore left at the free disposal of the plaintiff in intervention, the costs to be paid by the party who fails to acquiesce in his demand.

Santisteban Chavarri & Company and Pedro Rivera Collazo having been cited and summoned, the latter was declared in default for failure to appear within the legal period, and the said firm, in answering the complaint, traversed the allegations thereof and interposed a counterclaim, concluding with the prayer that the proceedings in intervention be dismissed; that the instrument on which they are based be declared void or rescinded as being simulated and made in fraud of creditors; and that the entries made in the registry of

property as a consequence of the simulated contract be cancelled; and in case this claim could not be acceded to, that judgment be rendered against Francisco D. Córdova directing him to pay to Santisteban Chavarri & Company the sum of 750 *pesos* in provincial money, or $390, and interest agreed to and accrued upon the joint and several obligations which he owes with Rivera Collazo, providing that to secure said sum and interest, the attachment on the 50 *cuerdas,* the ownership of which is claimed by Córdova, should remain in force and that the same be considered as attached against him.

In support of the first part of the prayer of its answer, the firm of Santisteban Chavarri & Company alleged that the contract of sale of the estate of 50 *cuerdas* of land by Pedro Rivera Collazo to his stepbrother, Francisco D. Córdova, was simulated and made in fraud of creditors, inasmuch as said sale was made with the greatest secrecy and for much less value than that which the estate then possessed, to a stepbrother who was in almost indigent circumstances and who was unable to pay the alleged price of $1,800.   That said sale was made on August 7, 1900, the same day on which the mortgage executed in favor of Roses & Company was being cancelled, and when the debtor, Rivera Collazo, found himself in danger of having his property attached by his creditors.   That the transfer of ownership was effected after the tax tranfers of absolute dominion had been abolished, without the notary certifying to the delivery of the price, without having deposited in cash in a banking institution or other institution, to the satisfaction of the creditors, the total amount of the debts of Rivera Collazo, and without the latter having retained in his possession sufficient property to satisfy them; and that Pedro Rivera Collazo had been personally in possession of the lands in controversy, his brother, Praxedes, who cultivates and administers said lands in the name of the former, having been upon the same after the attachment was levied.   As grounds of law the defendant firm invoked arti-

cles 1275 and 1291 of the former Civil Code, the General Order of March 20, 1899, and the decisions of the Supreme Court of October 6 and 31, 1865, May 26, 1866, October 25, 1895, and March 14, 1896.

The same firm, in support of its counterclaim, alleged that, in addition to the two deeds executed on August 7, 1900, by Pedro Rivera Collazo, one of the sale of 65 *cuerdas* in favor of Roses & Company for the sum of $4,289.10, American gold, in payment of a mortgage credit, and the other of the sale of 50 *cuerdas* to Francisco D. Córdova for the supposed sum of $1,800, when Rivera Collazo, at the time of executing said documents, had personal creditors for about 5,000 *pesos*, which fact was known to his stepbrother, Francisco D. Córdova, he effected another simulated alienation on the 16th of the said month of August of 21 *cuerdas* of land for $500, in favor of Manuel Belén Pérez, who had just established another claim in intervention of ownership; and on the 14th of November of the same year he mortgaged 40 additional *cuerdas* of land for the sum of $1,500, which at the present time are not worth one-half of the incumbrance resting thereon; that there are now only left to Rivera Collazo, free from incumbrance, the share of the copartnership upon which an attachment was made against him, and 24.83 *cuerdas* of the estate of 200 *cuerdas*, both pieces of land being of poor quality, without anything planted thereon, and situated upon the peaks of inaccessible mountains, and are not worth more than $400, which sum must be answerable for the personal debts of Rivera Collazo amounting to about $3,000, and among said debts that of Santisteban Chavarri & Company amounting to $1,336.69 and some $500 additional as interest and costs; that before and after the execution of the pretended sale of Rivera Collazo to Córdova both of them had offered to pay to the creditors of Rivera the debts of the latter by means of the same lands sold, but at such a high price that they did not care to accept such a ruinous transaction; that at the time

the attachment was made Rivera Collazo did not protest or say anything with respect to the alleged alienation. As facts connected with the counterclaim it set forth that if the proceeding in intervention should succeed, Santisteban Chavarri & Company and the other creditors of Rivera could not in any way collect their claims, because if nobody would certainly give the amount of the claim of the said commercial firm for the attached property, the property which would remain to Rivera, after deducting that in litigation, would not be sufficient to pay the costs for which judgment had been given against him in the executory proceedings; that among the seven obligations the signatures and debts of which are acknowledged and confessed by Rivera, and upon which instruments of credit are based the attachment and execution of Santisteban Chavarri & Company against Rivera Collazo, is found a promissory note dated November 7, 1896, and which matured on December 31, 1899, for the sum of 650 provincial *pesos* or $390, for which amount and the agreed interest thereon both Rivera Collazo and Francisco Córdova are jointly and severally liable as debtors; and, therefore, upon the supposition that the contract of purchase and sale which is the basis of the proceedings in intervention should not be declared void and rescinded, the attachment on the 50 *cuerdas* should in any event be left in force for the sum, with interest, for which Córdova, is liable as a joint debtor. As grounds of law relating to the counterclaim it pleaded articles 1108, 1125, and 1144 of the former Civil Code, and article 1398 of the Law of Civil Procedure.

The counterclaim having been referred to Francisco D. Córdova, he alleged as facts connected with the same that, although it was true that among the obligations upon which execution proceedings were instituted against Rivera Collazo, there is one for the sum of 650 provincial *pesos,* or $390, subscribed by the former and by Córdova, it was false that it was signed jointly and severally; for which reason Córdova

does not owe the $390, although at the proper time he may owe one-half thereof, or $195. As grounds of law he cited articles 1137, 1138, and 1144 of the former Civil Code, and concluded with the prayer that judgment be rendered in accordance with the complaint dismissing the counterclaim, with costs against Santisteban Chavarri & Company.

It appears from the evidence taken upon the trial at the instance of the plaintiff: 1. That the latter presented various receipts for taxes paid by Francisco Córdova, in the fiscal years 1897-98, 1898-99, 1899-1900, and 1900-1, as taxes upon land; a certificate issued by the municipal mayor of Utuado on August 19, 1901, in which it appears that Córdova, as a resident and property owner of the *barrio* of Caonillas Arriba of said town, had been a taxpayer to the State and municipality from the fiscal year 1897-98 to the year 1900-1 upon a tract of land composed of 85 *cuerdas;* and another certificate issued by the Treasurer of Porto Rico on the 28th of October of said year, according to which Francisco D. Córdova, in assessment roll No. 729 for the fiscal year 1901-02, declared that he possessed in the *barrio* of Caonillas-Arriba of Utuado 50 *cuerdas* of land valued at $494, and a hut valued at $6. 2. That Pedro Rivera Collazo, at the instance of Francisco D. Córdova, produced two promissory notes, both signed by Rivera Collazo on February 6, 1897, in favor of Manuel Praxedes Rivera, or to his order, for the sum of 500 *pesos* each, in payment of two installments upon the value of the estate which Pedro Rivera Collazo purchased from Manuel Praxedes Rivera on the said date of February 6, 1897, which documents, one of which became due on February 6, 1899, and the other on the same day and month of the following year, with a credit of 1 per cent. monthly interest in case of delay, were indorsed by Manuel Praxedes Rivera in favor of Francisco D. Córdova on June 6, 1899, for value received, Córdova having signed, on August 7, 1900, the receipt for the value of both promissory notes for 50 *cuerdas* of land sold by Pedro

Rivera Collazo.  3. That according to a certificate issued by the clerk of the Arecibo court in the executory action prosecuted by Santisteban Chavarri & Company against Pedro Rivera Collazo for the recovery of money, the following documents appear: One for 650 *pesos,* to become due on December 31, 1899, with annual interest at 12 per cent. from maturity, signed by F. D. Córdova and Pedro Rivera Collazo on November 7, 1896, in favor of José Liberato Diaz, who indorsed it on December 22, 1897, in favor of Manuel Yguina Fuentes, and the latter in favor of Santisteban Chavarri & Company, on December 2, 1900; another note for 600 *pesos,* to become due December 31, 1898, with annual interest at 12 per cent. from maturity, signed on December 7, 1896, by F. D. Córdova and Francisco Rivera Collazo in favor of José Liberato Díaz, who indorsed it on March 10, 1898, to Manuel Yguina Fuentes, and the latter in favor of Santisteban Chavarri & Company, on the 15th of said month of March; and a third note for 51.50 *pesos,* to become due on the last day of January, 1898, likewise signed by F. D. Córdova and Pedro Rivera Collazo on November 18, 1896, in favor of Manuel Negron Colón, who indorsed it, on January 24, 1898, to Manuel Yguina Fuentes, and the latter to Santisteban Chavarri & Company on January 20, 1899.

It appears from the evidence taken at the instance of Santisteban Chavarri & Company: 1. That a certified copy of three promissory notes of which mention has been made was brought to the record, and also a certified copy of the expert appraisement made by the expert, Juan del Toro Cancel, in the executory action of Santisteban Chavarri & Company, said appraisement having been made in the following manner: 5 *cuerdas* of lowland at 45 *pesos* each, 225 *pesos;* 90.83 *cuerdas* of elevated land at 20 *pesos* each, 1,816.60 *pesos;* 8 *cuerdas* constituting the co-ownership of Rivera Collazo in 16 *cuerdas,* at 20 *pesos* each, 160 *pesos;* a warehouse situated on the 95 *cuerdas,* 100 *pesos;* a terrace for drying

coffee, 15 *pesos;* which items give a total of $2,316.60.
2. That there were also brought to the record a certified copy
of the instrument in which Santisteban Chavarri & Company,
under date of December 3, 1900, requested a cautionary at-
tachment against the property of Pedro Rivera Collazo; a
certified copy of the order of the 5th of said month of Decem-
ber, by which said attachment was decreed; of the act of
entering the cautionary notice of the same; of the demand for
payment made upon Rivera Collazo, the latter having stated
that he was absolutely destitute of money with which to pay
the sums demanded of him; of the statements of Manuel
Yguina Fuentes and Pedro Rivera Collazo acknowledging the
signatures of the seven promissory notes which were handed
to them for inspection, Rivera Collazo adding that the fact
of the debt evidenced thereby was true; and a certified copy
of the notice informing Rivera Collazo that the cautionary
attachment levied upon his property had been ratified.
That there was also produced a copy of the deed of purchase
and sale executed on August 16, 1900, by Pedro Rivera
Collazo in favor of Manuel Belén Pérez, for 21 *cuerdas* of
land situated in the *barrio* of Caonillas-Arriba, of the munici-
pal district of Utuado, for $500, American gold, which the
vendor acknowledged having received as the balance of his
accounts with the purchaser, with which deed, as a title
Manuel Belén Pérez presented a complaint in intervention
of ownership in the Arecibo court on June 26, 1901, against
Santisteban Chavarri & Company and Pedro Rivera Co-
llazo, alleging that said lands formed part of those attached
in the executory actions to which reference has been made.
4. There was also introduced as evidence a certificate issued
by the Registrar of Property of Arecibo, from which it ap-
pears that Pedro Rivera Collazo and his brother, Manuel
Praxedes, acquired in common by gift as an advance of
their legal portion from their parents, a rural estate of
200.83 *cuerdas,* situated in the *barrio* of Caonillas-Arriba,

municipal district of Utuado; that by deed executed on February 6, 1897, Manuel Praxedes Rivera sold to his brother, Pedro, his co-ownership in said estate for the price received of 5,000 *pesos;* that Pedro being the owner of the whole of the estate, the ownership of 65 *cuerdas* thereof was conveyed to the commercial firm of Roses & Company in payment of a claim; that by public deed executed in Utuado on August 7, 1900, and recorded on the 12th of December of the same year, Pedro Rivera Collazo sold to Francisco D. Córdova 50 *cuerdas* of the same estate for the price received of $1,800; that by another deed executed on August 16, 1900, Pedro Rivera Collazo sold to Manuel Belén Pérez 21 *cuerdas* of the same estate for the price received of $500, said deed having been recorded in the registry on the 14th of December of the said year; that by another deed of November 14, 1900, the said Pedro Rivera Collazo mortgaged 40 *cuerdas* of the said estate in favor of José María Lafontaine for the sum of $1,500; that Rivera bound himself to make payment on January 31, 1901, increasing the mortgage $300 more for expenses and costs in case of litigation; that of the estate of which mention is being made Rivera has left only 24 *cuerdas;* and that Pedro Rivera Collazo and Francisco D. Córdova also have recorded in their favor, in common, the possession of an estate of 16 *cuerdas,* which they acquired by purchase from José Liberato Díaz. 5. That Liberato Díaz, Antonio María Fernández, Manuel Yguina Fuentes, and Francisco Yrizarri being called upon, the first stated that the only promissory notes owed to him by Rivera Collazo he had indorsed to Yguina Fuentes; the second—namely, Fernández—stated that Rivera Collazo was indebted to him for three promissory notes, certified copies of which were attached to the record, and which amount to 367 *pesos,* the same having been signed on February 22, 1897, one of them for 122 *pesos,* and falling due on January 30, 1899, and the other for the same amount and falling due on January 30, 1898, the three instruments bearing interest at

the rate of 12 per cent. per annum from the date of their maturity; the third—namely, Yguina Fuentes—declared that it was not possible for him to exhibit the documents of Pedro Rivera Collazo which he had in his favor, for the reason that he had indorsed them to Santisteban Chavarri & Company. The books of the former having been examined, it appears that the account of Rivera Collazo shows a sum of 113.81 *pesos* in his favor, due December 30, 1898, and that he also owes him three instruments maturing on January 30, 1898, to wit: One for 433.46 *pesos;* another for 50 *pesos;* and the third for 51.50 *pesos;* and also two additional documents: one having fallen due on December 30, 1898, for 50 *pesos,* and the other, for the same amount, having fallen due on the same day and month of the following year, which last items give the total of 634.96 *pesos.* The fourth of said parties—that is, Yrizarry, said that Rivera Collazo owed him about 500 *pesos,* according to documents which were mislaid after the last cyclone.

Pedro Rivera Collazo, in reply to questions, testified that prior to making the sale to Córdova he owed Manuel Yguina Fuentes 634.96 *pesos,* to Antonio Ma. Fernández 367 *pesos,* to Francisco Irizarry 500 *pesos,* to Santisteban Chavarri & Company 1,336.79 *pesos,* to José María Lafontaine, 1,500 *pesos,* and to Manuel Belén Pérez 500 *pesos;* that in the deeds executed in favor of Manuel Belén Pérez and José María Lafontaine the amount of the alienated lands is given as value received for the reason that he was the debtor of said parties for one or two years prior to the execution of said instruments; that before effecting the contract of purchase and sale of the 50 *cuerdas,* he and his stepbrother, Francisco D. Córdova, were in conference with the creditors, Manuel Yguina Fuentes, Antonio María Fernández, Liberato Díaz, and Francisco Yrizarry, and all of them offered to pay the debts of Rivera Collazo with lands at the rate of 175 provincial *pesos* per *cuerda,* having insisted upon

the same thing after the sale was made to Córdova; but he cannot state precisely whether the lands acquired by the latter were or were not offered to the creditors, who did not accept the form of payment on the ground that the price of the lands was excessive and that neither before nor after the sale of the lands to Córdova did he deposit in cash in a banking institution, or in any other institution, to the satisfaction of his personal creditors, the total amount of his obligations. Francisco D. Córdova stated upon his examination that the lands upon which he paid taxes for the years 1899 and 1900 belonged to his wife and that before making the purchase of the 50 *cuerdas* he and his stepbrother, Pedro Rivera Collazo, had a conversation with Manuel Yguina Fuentes, Antonio Ma. Fernández, Liberato Díaz, and Francisco Yrizarry, during which Rivera Collazo offered to pay his creditors with land at the rate of 175 *pesos* per *cuerda,* which form of payment they did not accept; and that prior to purchasing the lands from Rivera Collazo he only had as his property, in undivided joint ownership, 8 *cuerdas* out of 16, the net income of which did not amount to 30 *pesos* per annum.

It appears from the expert testimony taken at the instance of the defendant firm that the expert appointed by Francisco D. Córdova and the umpire valued the 65 *cuerdas* of land given by Rivera Collazo to Roses & Company in payment of their credit at $4,260; the 21 *cuerdas* sold by Rivera Collazo to Manuel Belén Pérez at $630; the 40 *cuerdas* mortgaged to José Ma. Lafontaine at $1,960; the 50 *cuerdas* sold to Francisco D. Córdova at $1,870; the 24 *cuerdas* left to Rivera Collazo, after making the foregoing alienations, at the rate of $40 per *cuerda;* and the 16 *cuerdas* which Rivera Collazo and Córdova possess in joint ownership at $960; whereas the expert of Santisteban Chavarri & Company valued the lands sold by Rivera Collazo to Roses & Company at $4,100; the 21 *cuerdas* sold to Manuel Belén Pérez at $420; the 40 *cuerdas* mortgaged to José Ma. Lafontaine at $887.50; the 50 *cuerdas*

sold to Córdova at $1,037.50; the 24 *cuerdas* and hundredths of another which were left to Rivera Collazo, after having made the foregoing alienations, at $497.60; and the 8 *cuerdas* which belong to Rivera Collazo of the 16 which he has in joint ownership with Córdova at $160.

Among the witnesses produced by Francisco D. Córdova appear Praxedes Rivera Collazo, a brother of Pedro Rivera Collazo, and Manuel Martínez Mora, an intimate friend of them both, who affirm that at the time the former sold to Pedro Rivera Collazo his joint interest in the 200 *cuerdas* of land acquired from their parents, Pedro signed obligations in favor of Praxedes as the amount of the transaction, which obligations (says Praxedes) he assigned to Córdova for the reason that his said brother did not pay them. Manuel Yguina Fuentes, a witness produced by the defendant firm, testified that before Pedro Rivera Collazo sold to Francisco D. Córdova the 50 *cuerdas* of land, both of them offered to said witness and to the other creditors of Rivera Collazo to pay them out of the value of the lands of the latter's estate, at the rate of 175 *pesos* per *cuerda,* and after said sale had been made they again offered him said lands for the like sum, including therein the 50 *cuerdas* sold to Córdova.

By judgment of February 11, 1902, the District Court of Arecibo dismissed the complaint in intervention of ownership and declared void the deed which serves as the foundation thereof, while also dismissing the counterclaim interposed by the defendant firm, and directed that the record of said deed be cancelled in the registry of property, as well as any other entry which may have been made in connection therewith; and that the attachment levied by Santisteban Chavarri & Company upon property of Rivera Collazo continue in force, with costs against the plaintiff in intervention.

From this judgment counsel for Francisco D. Córdova took an appeal in cassation, which was allowed, and the record having been forwarded to this court, after a citation and

summons of the parties, said proceeding was conducted as an ordinary appeal in accordance with the law of March 12, 1904, converting the Supreme Court of Cassation into a court of appeals. A day having been set for the hearing, the same took place with the attendance of the attorneys for Francisco D. Córdova and Santisteban Chavarri & Company, who alleged such matters as were deemed conducive to the defense of their respective claims.

*Mr. Casulduc,* for appellant.

*Mr. Alvarez Nava,* for respondent.

The other respondent did not appear.

MR. JUSTICE HERNÁNDEZ, after stating the foregoing facts, delivered the opinion of the court.

The Judicial Order of March 5, 1899, as amended by the order of the 20th of the same month, provides in its first article that contracts for the conveyance of property entered into after the abolition of the tax on transfers of absolute dominion, without consideration or on an unlawful pretext, but effected with the intention of preventing the creditors of either of the parties from making good their claims against such property, shall be considered simulated contracts; and in its second article it is provided that under the preceding article will be comprised all contracts for the transfer of property effected by persons liable at the time for other than mortgage debts, or by persons engaged to guarantee the debts of others, if, upon the execution of said contracts, the notary should not certify in the deed that the price had been delivered in his presence; or unless a deposit in cash has been made in some bank or other institution to the satisfaction of their creditors, covering the full amount of said obligations; or unless sufficient property to meet the same has been retained by said debtors.

The contract of purchase and sale of 50 *cuerdas* of land entered into by Pedro Rivera Collazo as vendor, and Francisco D. Córdova as purchaser, embodied in the public instru-

ment executed before the notary of Utuado on August 7, 1900, Collazo stating that he had received from Córdova, prior to the execution of said deed, the agreed price of $1,800, American gold, was without consideration inasmuch as the plaintiff, finding it impossible to prove the delivery of the sum, has undertaken to show that the price was paid with two promissory notes of the value of 1,500 *pesos* each which the vendor, Rivera Collazo, had issued in favor of his brother, Manuel Praxedes, at the time of purchasing from him, by deed of February 6, 1897, his interest in the ownership of an estate which both brothers had acquired from their parents, which notes were indorsed in favor of Francisco D. Córdova and were produced on the trial, without Córdova having accomplished his purpose; for apart from the fact that such documents are at variance with the deed of August 7, 1900, in which no reference to them is made, article 1227 of the former Civil Code, applicable to the case, prescribes that the date of a private document shall not be computed with respect to a third person except from the day on which it may have been incorporated or recorded in a public registry, from the death of one of those who signed it, or from the day on which it is delivered to a public official by reason of his office. · Furthermore, the verity of said promissory notes cannot be considered as established by the statements of Manuel Praxedes Rivera and Manuel Martínez Mora, the former of whom is an interested party and the other an intimate friend of the two brothers, Pedro and Manuel Praxedes Rivera.

The personal claims for which Pedro Rivera Collazo was liable at the time he executed in favor of Francisco D. Córdova the deed of August 7, 1900, which serves as the basis of the intervention proceedings, are superior in value to the property remaining to Rivera Collazo to meet his obligations, if the different elements of proof introduced in the suit are considered together, and if consideration be given to the great diversity respecting said value between the expert opinions

expressed; which opinions the court, according to article 631 of the Law of Civil Procedure, shall consider according to the rules of sound judgment, without being obliged to subject itself to the same. For all of these reasons, and the notary before whom the deed of August 7, 1900, was executed not having certified to the delivery of the price, and Pedro Rivera Collazo having failed to deposit in cash to the satisfaction of his creditors, the total amount of his personal obligations on the date mentioned, it is clear that the contract embodied in the said deed was a simulated one, not only according to article 1, but also in compliance with article 2 of the judicial order previously cited.

In corroboration of the simulation of the contract of purchase and sale involved in the case comes the testimony of Manuel Yguina Fuentes, who affirms that subsequent to the execution of said contract Pedro Rivera Collazo and Francisco D. Córdova offered to pay the creditors of Rivera Collazo with the lands of the latter, including those sold to Córdova, and the testimony of Rivera Collazo himself, who does not deny but declares that he cannot state exactly whether the offer embraced the lands sold to Córdova.

According to article 1275 of the former Civil Code contracts without a consideration, or with an unlawful consideration, do not produce any effect whatever; and therefore, the contract of purchase and sale entered into by Pedro Rivera Collazo and Francisco D. Córdova being without a consideration, and having been made in fraud of Santisteban Chavarri & Company, it should be declared null and void.

The complaint having been dismissed, and the counterclaim interposed by the commercial firm of Santisteban Chavarri & Company being subsidiary, it is unnecessary to make any ruling with respect to said counterclaim.

In view of the legal provisions which have been cited, and rule 63 of General Orders No. 118, series of 1899, we adjudge that, affirming where proper, and reversing as to the rest, the

judgment appealed from, we ought to declare, and do declare, null and void the deed of purchase and sale of lands executed August 7, 1900, by Pedro Rivera Collazo and Francisco D. Córdova; and, therefore, that the proceedings in intervention of ownership do not lie, the costs in both courts to be paid by Francisco D. Córdova. The record of said deed in the Registry of Property of Arecibo is ordered to be cancelled and the suspension of the compulsory proceedings in the executory action in which the present proceeding originated is ordered to be raised, the record to be returned to the Arecibo court with the proper certificate.

Chief Justice Quiñones and Justices Figueras and Mac-Leary concurred.

Mr. Justice Sulzbacher did not sit at the hearing of this case.